**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| LORI ANN BAGLIERE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV109 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Lori Ann Bagliere, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 14; see also Docket Entry 12 (Plaintiff's Brief); Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging an onset date of July 31, 2009. (Tr. 180-88.) Upon denial of that application initially (Tr. 62-78, 98-101) and on reconsideration (Tr. 79-97, 103-06), Plaintiff requested a hearing de novo before an Administrative Law

Judge ("ALJ") (Tr. 107-10). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 26-61), during which Plaintiff amended her onset date to May 2, 2012 (see Tr. 36, 204-05). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 7-21.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 6, 281-84), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] last met the insured status requirements of the [] Act on June 30, 2012.

2. [Plaintiff] did not engage in substantial gainful activity during the period from her amended alleged onset date of May 2, 2012 through her date last insured of June 30, 2012.

3. Through the date last insured, [Plaintiff] had the following severe impairments: major depressive disorder; generalized anxiety disorder; borderline personality disorder; bipolar disorder; history of polysubstance dependence; history of right tibiofibular fracture with repair surgery; and right knee injury.

. . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except she can only occasionally climb ramps/stairs and never climb ladders/ropes/scaffolds.

2

She can occasionally bend, balance, crouch, and stoop. She can never kneel or crawl. She should avoid performing work around workplace hazards that include unprotected heights and moving machinery. Additionally, she can perform simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few workplace changes. She may have occasional contact with supervisors, coworkers, and the public. [Plaintiff] requires a sit/stand option every 2 hours at the work station with standing and walking a total of 4 hours in an 8-hour workday. [Plaintiff] should have no use of foot pedals with the right lower extremity and can do no pushing/pulling with the right lower extremity. [Plaintiff] requires the use of a cane for walking. Lastly, [Plaintiff] must elevate her right lower extremity approximately 1 foot off the floor while sitting.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the [] Act, at any time from May 2, 2012, the [amended] alleged onset date, through June 30, 2012, the date last insured.

(Tr. 12-20 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v.

<u>Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[4]

<h2 align="center">B.  Assignments of Error</h2>

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "Social Security Ruling 16-3p[, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, 2016 WL 1119029 (Mar. 16, 2016) ("SSR 16-3p")] retroactively requires remand for reevaluation of [Plaintiff's] disability claim without the ALJ's negative assessment of [Plaintiff's] credibility" (Docket Entry 12 at 3 (bold font and capitalization omitted)); and

(2) "the [ALJ] committed a reversible error at step five of the [SEP] by failing to include all of [Plaintiff's] particular limitations in the hypothetical posed to the [VE] at [the] hearing" (<u>id.</u> at 5 (bold font and capitalization omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (<u>See</u> Docket Entry 15 at 4-19.)

---

[4]  A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## 1. Retroactivity of SSR 16-3p

In Plaintiff's first assignment of error, she contends that SSR 16-3p (effective March 28, 2016, <u>see</u> SSR 16-3p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, 2016 WL 1237953, at *1 (Mar. 24, 2016) (correcting effective date of original Ruling), approximately one year and ten months after the ALJ's decision in this case) should retroactively apply to the ALJ's decision under the "persuasive reasoning" of <u>Mendenhall v. Colvin</u>, No. 3:14-CV-3389, 2016 WL 4250214 (C.D. Ill. Aug. 9, 2016) (unpublished). (Docket Entry 12 at 5.) Plaintiff maintains that SSR 16-3p rescinded Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"), "eliminat[ed] . . . the term 'credibility' from [the Social Security Administration's ("SSA")] sub-regulatory policy," and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." (Docket Entry 12 at 4 (quoting SSR 16-3p, 2016 WL 1119029, at *1).) According to Plaintiff, "the ALJ significantly relied upon a negative assessment of . . . [Plaintiff's] general credibility" in denying her claim for benefits and thus retroactive application of "SSR 16-3p would operate to bar the ALJ from considering the factors stated in the

9

negative credibility assessment." (Id. at 3 (citing Tr. 18).) Plaintiff's arguments miss the mark.

Well-settled law establishes that administrative rules do not apply retroactively unless Congress has explicitly authorized the agency to enact retroactive rules and the new rule in question expressly states its retroactive effect. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). On the other hand, an agency rule that merely clarifies existing policy "can be applied to the case at hand just as a judicial determination construing a statute can be [so] applied." Clay v. Johnson, 264 F.3d 744, 749 (7th Cir. 2001) (citing Pope v. Shalala, 998 F.2d 473, 483 (7th Cir. 1993), overruled on other grounds, Johnson v. Apfel, 189 F.3d 561 (7th Cir. 1999)).

Here, the Act authorizes the SSA to "adopt reasonable and proper rules and regulations," but does not expressly authorize retroactive rule-making. 42 U.S.C. § 405(a); see also Combs v. Commissioner of Soc. Sec., 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."). Moreover, the text of SSR 16-3p contains no statement indicating that the SSA intended that Ruling to apply retroactively. See generally SSR 16-3p, 2016 WL 1119029.

10

Accordingly, SSR 16-3p can only apply retroactively to the ALJ's decision in this case if it merely underlines clarifies (as opposed to changes) existing SSA policy. See Clay, 264 F.3d at 749.

The undersigned's research has not revealed any cases from the United States Court of Appeals for the Fourth Circuit addressing the retroactivity of SSR 16-3p. However, as Defendant points out in brief (see Docket Entry 15 at 7-8), the majority of district courts within the Fourth Circuit to have reached the question at issue, have declined to give retroactive effect to SSR 16-3p. See, e.g., Culbreath v. Colvin, No. 5:15-CV-00063, 2016 WL 6780347, at *3 n.2 (W.D.N.C. Nov. 15, 2016) (unpublished) ("Because SSR 96-7p was in effect at the time of [the] ALJ[]'s decision, this [c]ourt will review the decision under SSR 96-7p."); Magruder v. Colvin, No. 2:16-CV-15, 2016 WL 6502531, at *14 n.8 (N.D.W. Va. Oct. 14, 2016) (unpublished) ("[T]he undersigned will review whether the ALJ's decision comports with SSR 96-7p, the ruling that was applicable at the date of the ALJ's decision."), recommendation adopted, 2016 WL 6495587 (N.D.W. Va. Nov. 2, 2016) (unpublished); Fuerst v. Colvin, No. 1:15-CV-1054, 2016 WL 5957602, at *5 n.7 (M.D.N.C. Oct. 13, 2016) (unpublished) (Webster, M.J.) ("Because the ALJ's decision predates the effective date of SSR 16-3p, this Recommendation will apply SSR 96-7p to Plaintiff's credibility challenge."), recommendation adopted, slip op. (M.D.N.C. Nov. 15, 2016) (Eagles, J.); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL

11

6594107, at *4 n.3 (E.D. Va. Oct. 13, 2016) (unpublished) ("The ALJ issued his opinion . . . before SSR 16-3p took effect. The [SSA] does not have the power to engage in retroactive rulemaking."), recommendation adopted, No. 3:16CV24 (JAG), 2016 WL 6573961 (E.D. Va. Nov. 4, 2016) (unpublished); Clarke v. Colvin, C/A No.: 1:15-4735-RBH-SVH, 2016 WL 6537995, at *16 n.9 (D.S.C. Oct. 12, 2016) (unpublished) ("Because the ALJ decided this case prior to . . . the effective date of SSR 16-3p, the court analyzes the ALJ's decision based on the provisions of SSR 96-7p . . . ."), recommendation adopted, 2016 WL 6525510 (D.S.C. Nov. 3, 2016) (unpublished); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 n.5 (S.D.W Va. Sept. 21, 2016) (unpublished) ("SSR16-3p is effective only to decisions issued after its effective date of March 28, 2016.");[5] but see Bonner v. Colvin, No. 5:15-CV-03332,

---

[5] None of these cases declining to apply SSR 16-3p retroactively expressly discussed whether SSR 16-3p clarified or changed existing SSA policy but, logically, their refusal to give retroactive effect to that Ruling implies that such courts believed that the Ruling effected a change in SSA policy that should not apply retroactively. Many district courts outside of the Fourth Circuit have similarly declined to give retroactive effect to SSR 16-3p, but without expressly reaching the question of whether that Ruling clarifies or changes existing SSA policy. See, e.g., Powell v. Colvin, No. 15-CV-789-SLC, 2016 WL 7048723, at *8 (W.D. Wis. Dec. 5, 2016) (unpublished) ("The substantive aspects of SSR 16-3p do not apply retroactively, so SSR 96-7p still governs th[e] case."); Colton v. Colvin, No. 3:15-CV-01962-CL, 2016 WL 7015669, at *4 (D. Or. Sept. 28, 2016) (unpublished) (noting that "the ALJ's . . . decision was issued nearly one year before SSR 16-3p became effective and there is no binding precedent establishing that this new ruling applies retroactively"), recommendation adopted, No. 3:15-CV-01962-CL, 2016 WL 6986504 (D. Or. Nov. 28, 2016) (unpublished); Withrow v. Commissioner of Soc. Sec., No. 2:15-CV-1437, 2016 WL 4361175, at *8 (S.D. Ohio Aug. 16, 2016) (unpublished) ("Because SSR 16-3p does not include explicit language to the contrary, it is not to be applied retroactively."), recommendation adopted, No. 2:15-CV-1437, 2016 WL 5402711 (S.D. Ohio Sept. 28, 2016) (unpublished); Cameron v. Colvin, No. 1:15-CV-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016) (unpublished) ("Because the text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively, the Court declines to do (continued...)

2016 WL 4408831, at *13 n.1 (S.D.W. Va. July 27, 2016) (unpublished) (applying SSR 16-3p retroactively to ALJ's decision because Ruling constitutes "'a clarification of, rather than a change to, existing law'") (quoting <u>Matula v. Colvin</u>, Civ. No. 14 C 7679, 2016 WL 2899267, at *7 n.2 (N.D. Ill. May 17, 2016) (unpublished)), <u>recommendation adopted</u>, 2016 WL 4411505 (S.D.W. Va. Aug. 16, 2016) (unpublished).

Despite that persuasive authority, Plaintiff urges the Court to follow the reasoning of the <u>Mendenhall</u> case from the Central District of Illinois, which held that SSR 16-3p should apply retroactively based on the following analysis:

> For a new rule that <u>clarifies</u> existing law to be applied retroactively, the new rule must be sufficiently similar to the prior rule. [<u>Pope</u>, 998 F.2d] at 483. Courts "will defer to an agency's expressed intent that a regulation is clarifying unless the prior interpretation of the regulation or statute in question is patently inconsistent with the later one." <u>Id.</u>[]
>
> Here, the question of the agency's intent is settled by the text of the newly promulgated rule. SSR 16-3p states: "we <u>clarify</u> that subjective symptom evaluation is not an examination of an individual's character" (emphasis added). Furthermore, SSR 96-7p and SSR 16-3p are substantially similar. Rule 16-3p affects only the second step of the method by which symptoms are evaluated. The new rule does not alter the remainder of

---

[5] (...continued)
so."); <u>Miller v. Commissioner of Soc. Sec.</u>, No. CV 15-12567, 2016 WL 4761607, at *7 (E.D. Mich. July 21, 2016) (unpublished) (applying SSR 96-7p and not SSR 16-3p to the ALJ's decision because the Act "'does not generally give the SSA the power to promulgate retroactive regulations'" (quoting <u>Combs</u>, 459 F.3d at 642, and citing 42 U.S.C. § 405(a))), <u>recommendation adopted</u>, No. 15-CV-12567-DT, 2016 WL 4729650 (E.D. Mich. Sept. 12, 2016) (unpublished); <u>Smith v. Colvin</u>, No. 3:14-CV-1752 (SRU), 2016 WL 1170910, at *7 n.3 (D. Conn. Mar. 23, 2016) (unpublished) (holding that SSR 16-3p "has not been made retroactive, and accordingly does not apply to th[e] case").

the evaluation, whether symptoms are evaluated at all, or the ALJ's obligation to take into account the entire record. Therefore, SSR 16-3p applies retroactively.

Mendenhall, 2016 WL 4250214, at *3 (emphasis in original).

The Court should not follow Mendenhall, as the decision places too much significance on the SSA's use of the term "clarify" in SSR 16-3p's introductory statement of purpose. See id. (quoting SSR 16-3p, 2016 WL 1119029, at *1). Although SSR 16-3p's statement of purpose does include the phrase, "we clarify that subjective symptom evaluation is not an examination of an individual's character," SSR 16-3p, 2016 WL 1119029, at *1 (emphasis added), a comparison of SSR 96-7p and SSR 16-3p demonstrates that SSR 16-3p effects much more than a mere clarification of existing SSA policy. For example, in the sentence immediately prior to the one containing the term "clarify," the SSA advises that SSR 16-3p "eliminat[es] the use of the term 'credibility' from [the SSA's] sub-regulatory policy." Id. (emphasis added). Conversely, SSR 96-7p contains an entire section entitled "Credibility," which provides the following guidance to ALJs regarding the evaluation of a claimant's credibility:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give

14

specific reasons for the weight given to the individual's statements.

The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about the individual's credibility.

SSR 96-7p, 1996 WL 374186, at *4 (emphasis added). The emphasized portions of the above-quoted passage make clear that, under SSR 96-7p, the probative value of a claimant's statements <u>depends</u> on the extent to which the ALJ accepts those statements as <u>true</u>.

In compliance with SSR 96-7p, the ALJ in this case made the following findings regarding Plaintiff's credibility:

After careful consideration of the evidence, the [ALJ] finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are <u>not entirely credible</u> for the reasons explained in this decision.

. . .

The record evidences an involuntary inpatient psychiatric admission in 2009 after [Plaintiff] ingested a large amount of Wellbutrin in a suicide attempt. At that time, she also reported a significant cocaine abuse history. Notably [Plaintiff] denied any history of illegal drug use at the hearing. <u>This does not lend credibility to her allegations</u>.

. . .

<u>Regarding [Plaintiff's] credibility, the [ALJ] notes several findings</u>. First, [Plaintiff] specifically denied any history of illegal substance abuse at the hearing. This testimony is in direct contravention to the positive cocaine test in 2013 and the report in 2009 that she had a significant history of cocaine abuse. Second, [Plaintiff] worked part-time up until 2012 following her right ankle injury in 2009. She testified that she stopped working because her family moved for her

15

husband's job, not because of a medical condition. Third, [plaintiff] has had virtually no treatment for either her physical or mental health conditions other than emergency room visits since the amended alleged onset date. She attributed her lack of treatment to lack of financial resources. <u>This testimony is not credible</u> when combined with positive alcohol and cocaine findings in 2013 and [Plaintiff's] report in 2014 that insurance coverage would be available as of April.

(Tr. 16-18 (emphasis added) (internal citations omitted).)

In direct contrast, SSR 16-3p eliminates the entire section entitled "Credibility" in SSR 96-7p and, <u>instead of</u> requiring analysis of a claimant's credibility, instructs ALJs to determine "the extent to which . . . symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the [claimant's] record." SSR 16-3p, 2016 WL 1119029, at *2. This shift in focus from a more general analysis of a claimant's truthfulness to an objective comparison of a claimant's statements to the evidence of record changes two decades of SSA policy (and ALJ practice) regarding the evaluation of the intensity, persistence, and limiting effects of a claimant's symptoms.

Furthermore, Plaintiff's own arguments undermine her position that SSR 16-3p merely clarifies existing SSA policy. Plaintiff maintains that, "[i]f this case is remanded for a new disability hearing and decision, <u>SSR 16-3p would operate to bar the ALJ from considering the factors [the ALJ relied upon] in the negative credibility assessment</u>." (Docket Entry 12 at 4 emphasis added).) The fact that, in Plaintiff's view, retroactive application of SSR

16

16-3p to the ALJ's decision in this case would transform her SSR 96-7p-compliant reliance on a "negative credibility assessment" in denying Plaintiff's claim for benefits into <u>per se</u> reversible error, strongly suggests that SSR 16-3p in fact <u>changes</u> existing SSA policy regarding symptom evaluation.[6]

In sum, because SSR 16-3p changes (rather than clarifies) existing SSA policy regarding subjective symptom evaluation, that Ruling does not apply retroactively to the ALJ's decision in this case, and Plaintiff's first assignment of error falls short.

## 2. Hypothetical Question

In Plaintiff's second and final issue on review, she contends that "the [ALJ] committed a reversible error at step five of [the SEP] by failing to include all of [Plaintiff's] particular limitations in the hypothetical posed to the [VE] at [the] hearing." (Docket Entry 12 at 5 (bold font and capitalization omitted).) More specifically, Plaintiff asserts that the ALJ omitted a restriction, that would have arisen from testimony by Plaintiff (which "[t]he ALJ did not discount" (<u>id.</u> at 6 (citing Tr. 14-19, 43-44))) that, "while using a cane to walk, [Plaintiff] effectively has use of only one non-dominant hand to carry objects"

---

[6] Notably, the <u>Mendenhall</u> court observed that, in enacting SSR 16-3p, "[t]he SSA <u>altered</u> the method of subjective symptom evaluation because of the wide variety of effects experienced by different patients with the same documented medical conditions." <u>Mendenhall</u>, 2016 WL 4250214, at *2 (emphasis added). The court's contemporaneous positions that SSR 16-3p "<u>altered</u> the method of subjective symptom evaluation," <u>id.</u> at *2, but constitutes "a clarification of an 'unsettled or confusing area [ ] of the law' rather than an outright change," <u>id.</u> at *4, seem internally inconsistent.

(id. at 7 (citing Tr. 56)). Plaintiff maintains that the ALJ's failure to include that restriction in the hypothetical question violates long-standing Fourth Circuit precedent requiring hypothetical questions to "fairly set out all of [Plaintiff's] particular impairments." (Id. (citing Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)).) Plaintiff's argument fails as a matter of law.

At step five of the SEP, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform considering his or her age, education, and vocational experience in conjunction with his or her RFC. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). Where, as here, a claimant suffers from both exertional and nonexertional limitations that preclude the ALJ's reliance on the Medical-Vocational Guidelines to direct a disability conclusion, (see Tr. 20), the ALJ must rely on vocational testimony, Walker, 889 F.2d at 49–50. "In order for a [VE's] opinion to be relevant or helpful, it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." Id. at 50.

In this case, the ALJ's hypothetical question (and RFC) included the limitation that Plaintiff "requires use of a cane for walking." (Tr. 56; see also Tr. 14.) The ALJ's omission of the further restriction that Plaintiff "effectively has use of only one non-dominant hand to carry objects" (Docket Entry 12 at 7) does not

18

constitute error, because such a restriction lacks the support of substantial evidence of record. Plaintiff bases this restriction solely on her own testimony (see Docket Entry 12 at 6 (citing Tr. 43-44)), which, as discussed above, the ALJ did not find "entirely credible" (see Tr. 16). Furthermore, Plaintiff's treating orthopedist, Dr. Stanley Harrison, stated only that Plaintiff "[m]ay need to use a cane with walking" and did not include any restrictions regarding which hand Plaintiff must use to hold the cane. (Tr. 509.)

Moreover, at the hearing before the ALJ, Plaintiff failed to question the VE regarding the impact on available jobs of Plaintiff's purported need to hold the cane in her dominant hand, despite the fact that she had the opportunity (through her attorney) to cross-examine the VE, including by posing additional hypothetical questions. (See Tr. 59-60.) As a result, Plaintiff has waived, in this Court, any challenge to the ALJ's omission of an additional restriction that Plaintiff must hold her cane in her dominant hand. See Howard v. Astrue, 330 F. App'x 128, 130 (9th Cir. 2009) ("The only limitation that substantial evidence arguably supports and that the ALJ failed to include in his hypothetical questions is depression. However, as noted above, [the plaintiff] waived any claim he may have had on this issue. [The plaintiff's] attorney had two opportunities to pose his own hypothetical questions to the VE, and he never mentioned depression as a

limitation."); <u>Hammond v. Chater</u>, No. 96-3755, 116 F.3d 1480 (table), 1997 WL 338719, at *3 (6th Cir. June 18, 1997) (unpublished) ("[The][p]laintiff also objects that the jobs listed by the VE, and used by the ALJ to deny benefits, are all at least semi-skilled, whereas the ALJ found her able to do only unskilled work. [The] plaintiff waived this argument by failing to raise it to the VE at the hearing."); <u>Helsper v. Colvin</u>, No. 12-0708(SRN/SER), 2013 WL 3974174, at *19 n.19 (D. Minn. July 30, 2013) (unpublished) ("The ALJ relied on the VE's testimony about those jobs in his findings at Step Five. [The plaintiff] did not challenge the VE's testimony as to those jobs and, therefore, any argument related to them is waived." (internal citation omitted)); <u>Campbell v. Commissioner of Soc. Sec.</u>, No. 11-14559, 2013 WL 823377, at *7 (E.D. Mich. Feb. 13, 2013) (unpublished) ("[D]espite expressly being given the opportunity to question the VE at the conclusion of the ALJ's questioning, [the] plaintiff's counsel failed to make any further inquiries or challenges to her testimony and thus waived any argument he may otherwise have had regarding the exertional requirements of the occupations the VE testified were available to [the] plaintiff." (internal citation omitted)), <u>recommendation adopted</u>, 2013 WL 822392 (E.D. Mich. Mar. 6, 2013) (unpublished); <u>Stepinski v. Astrue</u>, No. CA 11-183 ML, 2012 WL 3866678, at * 9-10 (D.R.I. Aug. 6, 2012) (unpublished) ("[The][p]laintiff complains that the ALJ did not ask the VE to

consider the length of his bathroom breaks or their predictability . . . . [The][p]laintiff's counsel questioned the VE regarding his testimony and did not ask about this matter . . . . The [c]ourt views unfavorably the silence of [the][p]laintiff's counsel at the hearing regarding the omission about which he now complains. Reversal and remand because of the omission about which [the] [p]laintiff now complains would encourage other counsel to remain silent in similar circumstances. This [c]ourt is disinclined to provide such an incentive. Accordingly, the [c]ourt finds that [the][p]laintiff waived this issue by failing to raise it before the ALJ." (internal citations omitted)), <u>recommendation adopted</u>, 2012 WL 3863812 (D.R.I. Sept. 5, 2012) (unpublished); <u>see also</u> <u>Pleasant Valley Hosp., Inc. v. Shalala</u>, 32 F.3d 67, 70 (4th Cir. 1994) ("As a general matter, it is inappropriate for courts reviewing appeals of agency decisions to consider arguments not raised before the administrative agency involved."); <u>Meanel v.</u> <u>Apfel</u>, 172 F.3d 1111, 1115 (9th Cir. 1999) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.").

### III.  CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 23, 2017